May it please the Court, my name is Robert Bastris and I am here to represent the appellants in this case who are two political parties in North Carolina, the North Carolina Constitution Party and the North Carolina Green Party and their individual members and leaders. They challenged a North Carolina filing deadline for nominating petitions and we are challenging that deadline which is in mid-May preceding the general election as applied to presidential candidates. The district court in granting summary judgment for the state in this case committed two errors. One was denying the plaintiffs the opportunity to conduct discovery and then of course on the merits itself and I address the discovery issue first and I think I need to provide a brief chronology of how this case unfolded with regards to discovery. The case was filed in March and shortly thereafter the complaint was amended. Plaintiffs sought a preliminary injunction. The district court provided us with a hearing on that. There was no discovery done before the hearing and no testimony at the hearing. It was strictly competing affidavits. The court denied that motion in early May and the parties then met for the Rule 26-F conference. At that conference the defendants gave notice to plaintiffs that the state intended to file a dispositive motion and our response was it's premature. We want to do discovery and included in the Rule 26-F report what discovery the plaintiffs wanted to do. And what was that? We wanted to explore the nature of the state's interest. The only evidence we had of what the state's justification for the mid-May deadline was a very cursory and self-serving affidavit from the director. But doesn't that help you? I mean if the state doesn't provide information that's more specific, why do you need discovery? The record is what it is. Well I think we wanted that. You can make the point that it's insufficient. You don't want it to get more sufficient. Well obviously the district court didn't see it that way but I think that the Well you, but you just said in response to the question that it was conclusory and was of no worth. So you wanted to take discovery. Well if it's of no worth then it would assist you in getting summary judgment. Well that will be my argument on the merits when I get there. But I think we had the, we should have had the opportunity to challenge what these articulated interests were. They did point to some interests and we wanted to say, you know, justify these. What's the explanation for these? And to cross-examine the state's witnesses with regards to the articulated interests. And the state also has data that we want to demonstrate the burdens imposed by the state's system and particularly the challenged May deadline. For example, we wanted information with regards to candidates who had successfully challenged at the, excuse me, successfully qualified for the ballot in the past and those who had not. Who had, in other words, attempted to qualify but had, were unsuccessful in their efforts. That and data with regards to voter identification or voter registration and the like are all in the hands of the state and we wanted the opportunity to discover it. Okay. So why is any of that relevant? How would that have helped your claim? Well the underlying, and I appreciate the point, the underlying standard in this case is a very fact-specific one. It's the Anderson versus Celebrezee balancing test in which the court, the Supreme Court requires that the, that a court addressing a challenge to a ballot access provision must identify the precise interests that the state puts forward to justify the burden on First Amendment rights. And then of course it must identify what that burden is and specify that burden and further look at to the extent to which the burden is necessary to achieve the articulated state interests. And that, that is a balancing process and it's one which requires a careful sifting of the facts and a very fact-intensive analysis and one which is not amenable to summary disposition where there's no adequate record. It's simply not the way in which that should go around, that decision should be made. And so as it turns out then, we, the point the state did file for A little trouble, I understand your points, they're quite general, but the deadline is the only issue here, not the burden of getting the 2%, right? That's correct, Your Honor. That's been upheld. That's correct. And so if you focus just on the deadline, you're basically saying, I want, it's a line drawing, I want more time than the state gave me. It's not just more time, it's That's all it can be, because that's all you're challenging is the deadline. You have a primary that has to be held by July 1. You're trying to register a party and you, the deadline for the counties is May 17th and the deadline for the state is June 1. That's correct. Which is 30 days before the primary. Now you're saying that that line drawing of putting the May 17 and June 1 dates are unconstitutional, is too great a burden. Apparently you want, what do you want, two more weeks, four more weeks? We have not specified a date. I will say this, that I think that the state's interest can easily be accommodated My question is, how much time do you want to make it so it's not burdensome? I mean, you got 3,000 signatures out of a needed 85,000. So you're sort of suggesting that an additional 30 days, you're going to be able, it's going to be meaningful to you to get the 85,000 signatures you need. Well, I don't think the particular facts of how many signatures were gathered in this case is relevant to the constitutionality of the date of the presidential filing. My question is whether you've even been hurt by a deadline. You're questioning line drawing. It's like setting the age of 18 for drinking. Obviously, 19 will be fine, 17 will be fine, 22 might be fine. There's a judgment call made by the legislature. And there's a burden put on people under 18 can't drink. Here they picked a deadline of June 1 for the state filing. And they have a statutory requirement, which you're not challenging, you have to have a convention by July 1. So you have to be constituted 30 days, at least 30 days before. Now, you're saying that that deadline is unconstitutional. It's an unconstitutional burden. What deadline would not be? Well, I think one which is narrowly tailored to achieve what the applicable state interests are, which justify an earlier deadline than that for the major parties. And certainly the state can do that. I mean, it has to verify petition signatures, so necessarily it can have an earlier deadline for third parties and unaffiliated candidates than for the major parties. But it's got to be related to somewhat reasonable and articulated interests. My question is what deadline would not be burdensome for you? I mean, the state has to, if you come up with 85,000 signatures and addresses, the state has to be able to verify them. That's correct. And then they have to send them to the counties. And they have to be put on ballots. You have to have a convention. I mean, this is all a process, a mechanical process that has to take place. And while you can challenge a deadline, you seem to be focusing on the fact that 2 percent is burdensome, and that's been decided. You have to focus just on the deadline, which is the time. That's what we are doing. But if I could explain. There are a couple points here. One, when I said it's not just more time, what I was referring to is the fact that it's those months, the summer months before the general election, that are most critical in the petitioning process. It's not just two more months. It's the fact that we're talking about June, July, and August, which is three months. So you want to the end of August. Well, that would be. That's past the convention time. So you want that statute changed too. It's not past. I thought the convention, a party convention has to be by July 1. What, you're talking about North Carolina's party? Yes. Yes. Well, it's a presidential election, and it's different from regulation of the state election. You'd have to ask for a different convention time too, right? You can't be qualifying as a party in August, and then have a convention on July 1. The state could easily bifurcate the presidential process from the rest of the process, as 18 other states have done, and they are listed in Mr. Winger's affidavit. Well, that means a whole bunch haven't. I'm sorry, Your Honor. The vast majority have not bifurcated. I mean, you're making a constitutional argument here, and what you would prefer is not necessarily that to which you're constitutionally entitled. We'd agree on that, right? That we can agree on. Yes. So you have to deal with, there's a whole lot of water over the bridge now on after the Anderson case about what is or is not permissible, and what you have to prove, and what the burden has to be. And so you're dealing not in the ideal, which you would regard as the ideal world, but in the world that's been created by the law and says what you have to come up with to show a burden. Well, I would agree with all of that, but I would say that, you know, in election law, all the time, courts are, in terms of applying the Anderson standard, are reviewing line-drawing decisions that the state has made. Right. I mean, Anderson v. Celebresi itself was a line-drawing decision. Right. They're about a filing deadline for presidential candidates. Right. And whether you're talking about voter closing periods, Blum v. Blunstein said one-year closing period for a one-year durational residency requirement was too long. 50 days, Marston v. Lewis said was okay. Rosario v. Rockefeller dealt with switching parties, deadlines on that. And the court, just a year later, in Cusper v. Pontiki said, even though Rosario's line was okay at 11 months suspension of switching parties, 23 months was too long. I mean, those are inherent in the process of So what standard do we use to determine this? I'm sorry, Your Honor. What standard? Doesn't the Supreme Court say that we look and if the regulation, the state regulation that's challenged is not on its face a problem, then we, as you said earlier, we balance things. That's correct. Okay. So that we are looking now to the balancing. So what is your best case? Well, Anderson itself, I think Believe me, I know the facts of Anderson. And there were four early filing deadlines in the entire country that were many months before. Well, our brief You don't have that kind of situation for independents. Well, Anderson is a leading case for us, not just because it sets out the standard and deals with a filing deadline, but it also makes the distinction between presidential races and other kinds of races. That the state's interests don't get quite the same degree of deference as they do with regards to regulation of presidential elections. And that's key to this case. Because, and we're not arguing that the May 17th deadline is unconstitutional as applied to Which is what Anderson held. That would have been comparable to an Anderson holding. Yes. That an early filing deadline, I think a March filing deadline Right. was unconstitutional. Right. But you don't have that. You don't make that argument. You don't have that case. Right. So, our point being that the May deadline interferes with this presidential process. The parties in this case, for example, the political parties in this case did not even nominate their candidates until after the filing Well, I take that back. The Constitution Party's candidate was selected in mid-April. The Green Party candidate was not selected until mid-July. Which is typical of what political parties do with regards to the nomination of presidential electors. It's not true in the other races. And the reason for that is political parties simply make a judgment to nominate their candidates in the summer months or late spring to take advantage of the identification of late developing issues to be able to respond more effectively to the major party candidates who are not identified early on and who aren't officially nominated until in this past election late August and early September. And so the point being those summer months are critical in the presidential election race. And of course, those parties also want to maximize their media coverage because media coverage is, of course, free publicity for them. And they're able to do that more effectively in the heat of the presidential race as it extends into the July and August months. And of course, there have been numerous cases which we cite in the brief there. There's a whole string of them in which courts have struck down deadlines ranging anywhere from February to August. And indeed, there was another case which was not in the brief Tennessee Green Party versus Hargett in which a district court struck down I believe was an August 4th deadline for presidential filings just this past June. And so there are plenty of cases which do carefully examine these filing deadlines as applied to presidential candidacies. And they're all cited I believe on pages 34 and 35 of our brief. And indeed, there are very few cases, if any, the state hasn't cited them I don't think, which has sustained a filing deadline as early as May as applied to presidential elections. They're simply a different animal. And of course, Anderson articulates why they're different because unlike the regulation of state office elections, there are externalities to North Carolina's regulation of presidential elections. What it does affects other states and affects the effectiveness of my client's candidacies across the country if they cannot get on the ballot in North Carolina. It makes them less effective and gives them a smaller voice on the national stage. And of course, that's what you need in order to compete in a presidential election. I've pretty much veered into the merits here, but I did want to emphasize the fact that we did not have any opportunity here to conduct our discovery. We did file both in response to the state summary judgment motion, we filed a Rule 56-D argument. That was our leading argument in response to the summary judgment. Did you at one point agree to postpone discovery until after the district court had ruled on the motion for summary judgment? Well, I started to explain that and got sidetracked. The reason for that was the state told us they were going to move for this dispositive motion, and we said we would file a Rule 56-D response, which turned out happened. And we agreed not to begin discovery until after the court ruled, pretty much as an accommodation of the state, of the defendants, who were, after all, involved in administering an election at that time. And I think it was our sense that we didn't want to unnecessarily interfere with that administration if the court was going to grant the dispositive motion in any event. And so we basically agreed to hold off until the court ruled. And then, of course, the court very quickly denied our Rule 56-D motion. Didn't the district court give you several months to produce affidavits in support of your position? And you never produced anything? We did have several months between the court denying our motion and eventually when the summary judgment case was held. But what we discovered is it's not so easy to get other state officials and other individuals to cooperate without the capacity to use compulsory process and the like. I mean, they had no stake in this case, and frankly, it was just difficult for us to make that effort, to successfully make that effort. We did, of course, submit affidavits from our clients, and we submitted an affidavit from an expert witness with regards to the burdens imposed by the early filing deadline and to the fact that such filing deadlines do not exist in other states. In other words, North Carolina is really an outlier with regards to presidential filing deadlines. If not the earliest, it's certainly one of the earliest in the country. Almost all of them of the other states are in July and August. This is relevant because I think it undercuts any articulated state interest. Well, they're not articulated very well. They really have not been fleshed out from that affidavit I mentioned earlier. But the fact that other states are able to... You have to start with your burden. You have to demonstrate a burden on you for having this deadline. Right. Well, I think we have. They're articulated in the affidavits, yes, that the early filing deadline cuts off the third party's ability to You just have to produce a petition with names. You don't do anything else. And you've got three and a half years to do it. Well, that's a make-weight, in my opinion. The fact you have three and a half years, you can't get people's attention with regards Well, the Supreme Court has talked about that. Right, well, on Anderson, yeah. About the long period of time. No, in other cases. And that weighs in favor of the state. Well, not heavily, in my opinion, because you just can't engage in effective petitioning long before an election. They're not voting for anybody. They're just supporting the establishment of your party. I said you can't engage in effective petitioning, and these parties are parties of You know, to stick your resources into what is basically an effort in futility, trying to get people's attention That doesn't address the deadline. I'm sorry, Your Honor. You talked about how many hours it takes to get every petition, how many minutes, or whatever it is to get every petition signed up, and how many people it would take, and all this. That sounds to me like the 2% challenge. The deadline is an arbitrary date picked in order to facilitate the whole election structure in North Carolina. It's an arbitrary date, I agree. It's arbitrary to the extent they could have picked June 10th. They could have picked May 25th. You're right. Deadlines are arbitrary by definition. And again, it's that line drawing. I haven't heard yet what your burden is. 85,000 names on a petition. The burden is, it deprives the parties of being able to petition at the most valuable moment for petitioning and for convincing voters of your platform. It's when the voters are engaged, it's when there's a focus on the presidential election, and it's a time when you can get to the voters. Summer months are the times for petitioning. And that's the burden of being cut off We have the caucuses starting in other states all several months before, and we have primaries several months before. It seems to me that the process begins about late January and early February now, doesn't it? Well, I mean it begins the year before. It's probably already started. We know Hillary Clinton is on a speaking tour as I stand here, and I'm out of time, Your Honor. If there are no further questions, I'll sit down. All right. Thanks. Holloway? May it please the Court, my name is Susanna Holloway. I'm here on behalf of the North Carolina Attorney General's Office representing the defendants. Ms. Holloway, what standard applies here? Your Honor, this Court, in its McLaughlin decision, used strict scrutiny Well, and the state doesn't argue any other standard? I'm curious. I think your colleague, in response to my question, said it was a reasonable, nondiscriminatory that we look at if the provision is reasonable and nondiscriminatory. If it is, then we don't look at strict scrutiny. But the state never even argues that. Your Honor, the state determined that Judge Mullen correctly found that North Carolina's May 17th deadline was constitutional, even using strict scrutiny. But does the state argue that that is the, what is the state's position on what the correct standard is? The state's position, Your Honor, is the correct standard could be a lower standard. Not could, what, you have to have a position. You can pick any position you want, but have a position. The state's position is that the standard is lower, where there is minimal to no burden shown by the May 17th deadline. And is that the situation here? Yes, Your Honor. And Judge Mullen correctly determined that that this is a facial challenge to the May 17th deadline, standing alone. The 2% signature requirement has already been upheld by this court in the McLaughlin decision. And therefore, this May 17th deadline standing alone imposes no burden, possibly some minimal burden. Judge Mullen in his decision said, even if it imposes some significant burden, which the state would not agree with, but even if it does, then all the state's compelling interest in having this interlocking web of deadlines, which constitutes the state's plan for running orderly elections. The court comes before the court, and the record demonstrates it has virtually no chance of meeting any deadline. The Green Party didn't get a single signature yet. They'd have to get 85,000 signatures. And the record doesn't demonstrate there's any likelihood that with any deadline, they could get the 85,000. What do we do then? Find that North Carolina's May 17th deadline is constitutional. We find that there's really no burden demonstrated, right? Right. That's why I asked you why you didn't argue that. At least I don't read your brief as arguing that. Does the state maintain that the May 17th deadline is narrowly tailored, and that a later deadline would not satisfy its interest? The state maintains that when the court is looking at narrowly tailoring, they're actually looking at the state's full complex plan of running orderly elections. They're taking a step back and looking at all the interlocking deadlines, which for North Carolina begin in February with the major party candidates filing. Then May 8th is the primary. Then May 17th is the deadline for submitting the new party. I do understand that, but a direct answer to my question, yes or no, would be appreciated, and that is, do they maintain that the May 17th deadline is narrowly drawn? Yes, Your Honor. Well then, what distinguishes North Carolina's interests from those of other states with later deadlines? North Carolina has determined that this plan is the plan which meets all the competing interests of voters, new parties, independent candidates, to run an orderly election. Okay, but I'm asking you for it. I understand that that's North Carolina's position, believe me. But what I'm trying to do is to get you to flesh out for me why this is necessary or appropriate in North Carolina, this earlier deadline, in contrast to other states. What considerations exist in North Carolina that don't exist there? Well, one big consideration is that North Carolina has a great deal of men and women serving in our armed forces who need absentee ballots to be sent to them overseas, and the Department of Defense has recommended a 60-day time frame for those ballots to go out to the overseas servicemen and women, and that pushes that deadline down to September. Is that in this record that there are more absentee ballots coming out of North Carolina than any other state? No, Your Honor, but I believe that in the Joint Appendix, in Gary Bartlett's declaration, he does reference these absentee ballots needing to be prepared to go out. There are absentee ballots in every state. Maryland has a lot of absentee ballots. I mean, I can't say I've studied every state, but I would be sort of surprised if North Carolina had the most. Well, that's one consideration for North Carolina. Another consideration is that this May 17th deadline falls after North Carolina's primary. North Carolina has a May 8th primary, and there are many other states that also have early primaries like North Carolina, but that primary falling May 8th then also sets other deadlines. So courts have determined that it is important to have the signature requirements for the petitions coming in after the primary, and in North Carolina has also set a later date for the petition signatures for independent candidates. They come in June 14th of 2012. So May 17th for new parties, June 14th for the independents. And while the plaintiffs are making their argument before Your Honors today saying that they're concerned about presidential candidates, their case, the posture of their case, is to be new parties and to have access to North Carolina in the field of candidates as new parties, and that is significantly different. Well you have all these deadlines, but that's not to say that they all couldn't be moved to accommodate a later deadline for the sorting out of these petitions. I mean you don't say that and I don't think there's any evidence that suggests that this has to be the date. Is that right? Your Honor, I would, with all due respect, submit that where there's no burden placed on the plaintiffs, there's no constitutional reason why North Carolina would have to change its whole entire scheme. I agree with that, but if the plaintiffs had made out a burden, you're not suggesting that North Carolina could not accommodate a later date? In moving one deadline, this May 17th deadline, many other deadlines would also have to be moved. Well, so what? If they had met their burden, that would be the result. Unless you could show that May 17th is the only date that would allow for an orderly conduct of this election. And there's no evidence in the record to suggest that. This is why the standard is important to you. Yes, Your Honor, the standard is important and it should be a much lower level of scrutiny applied where there is minimal to no burden. But furthermore, this Court in McLaughlin carefully set out that it's looking at the complex whole of North Carolina's deadlines as well as the ameliorating factors such as allowing significant time for the parties to gather these signatures. That states are not forced to show that each and every deadline meets a strict scrutiny standard in and of itself, standing alone. Does it help your case that the plaintiff simply can't tell us what an alternative deadline would be? Yes, Your Honor. The plaintiffs have never put forward what an alternative deadline would be. They seem to focus more on independent candidates. They talk they've mentioned cases where the deadlines for independence petitions filing have been struck down when they are significantly pre-primary. But in this case, their case is about new parties. And as you just pointed out, it's post-primary. Yes, Your Honor. It's after the primary. They they're basically asking to redraw the deadlines. And they're basically showing no burden. And Judge Mullen I mean, they're not because they're not telling us where the lines should be drawn. That's correct, Your Honor. They want us to do it. Yes, Your Honor. And they haven't acknowledged the importance of all these other interlocking deadlines, such as in the month of June, the new parties would have their state conventions to nominate their candidates. So a May 17 deadline, giving them the month of June to hold their state party convention is completely appropriate. Were the same deadlines in place when McLaughlin was decided? Yes, Your Honor. The laws regarding the new parties have not changed. Therefore, McLaughlin should be the absolute controlling law for this case. And is the in determining whether 2% is burdensome is the date that the petition has to be filed part of that analysis? Your Honor, the court did not specifically address the May 17 deadline in the McLaughlin case. But the state would submit that that is certainly part and parcel of  But there has to be a deadline by which those signatures are submitted. And the court didn't find any problem with a deadline falling after the primary. North Carolina would also present to this court that Judge Mullen correctly determined that no further discovery was needed. His Rule 56D order denying the plaintiff's motion was that no discovery would be conducted for a certain period of time and most of the information that they sought was readily available in the public realm. Gary Bartlett's declaration in the record states that the North Carolina State Board of Elections on their website tracks the new parties which are attempting to get onto the ballot. Furthermore, the information that other states had regarding new parties attempting to get onto their ballots was not readily available to the plaintiffs as it would have been to the defendants. And as Your Honor's have already noted the plaintiffs did not seek out and submit further affidavits when they were given the chance. How many states have earlier deadlines? Your Honor, I believe it is in the defendant's briefs that there are 14 other states with as early deadlines if not earlier. And if I could refer to that page, I could look at exactly which ones are earlier. Would you like me? No. There are 14 other states that have as early if not earlier deadlines. There are also nine other states with early primaries. North Carolina is one of the earliest states with as early but it is not one of the earliest. That seems to be a changing phenomenon. I can remember in the old days they used to have conventions and they actually decided candidates for the parties at the conventions. You were digging yourself. Judge Mullen correctly determined that North Carolina's May 17th deadline was constitutional. The deadline is part of a complex web of interlocking deadlines beginning in February and then going on through the summer. North Carolina has significant ameliorating factors which Judge Mullen noted such as the people signing the petitions do not have to then say they are actually affiliated with that new party. They can vote in primaries they can be registered with other parties. That sort of goes more to the 2% doesn't it? Whether it is easier or not well maybe the deadline is linked to the analysis under the 2%. That was my initial question. It is hard to separate it out because the greater the percentage the longer it would take to get the petition I would think. And then that would be an interesting question as to well who can sign up for the petitions and there are ameliorating factors there but if you have basically a 3.5 year period during which you collect these the question then becomes is it 3 years 6 months should you get or 3 years 8 months and I guess your colleague says that is irrelevant what is really relevant is how much of the election season does he get? Yes your honor but giving the plaintiffs 3.5 years they have numerous election seasons to be gathering their signatures in. And the Libertarian Party it is in Gary Bartlett's affidavit in the joint appendix that the Libertarian Party used election day in 2004 to gain many signatures and then was able to gain ballot access in 2006 this 3.5 year window I think it is even broader longer than that because 3.5 year period is simply the date by which you determine how many signatures are needed to be able to get on the ballot based on the prior gubernatorial election but in theory there is nothing to stop any party from beginning to gather signatures even before then is that right? your honor I believe that the signatures that they do just have the 3.5 years they have to be within that 3.5 year window yes your honor didn't we say in McLaughlin that North Carolina's ballot access restrictions were in fact in fact impose a severe burden and therefore are subject to strict scrutiny isn't that the end of that? as far as this court is concerned yes your honor but that was focusing on the 2% requirement and that is because in North Carolina what this court determined in McLaughlin was that the 2% signature requirement an unaffiliated candidate could not put a name next to a name of a party next to his name an unaffiliated candidate in North Carolina is unaffiliated in order to have that new party designation the new party would have to qualify for the ballot and therefore the new party would have to obtain the 2% signature requirement for qualifying for the ballot and that was determined to be a burden on the access and actually a pretty high burden but with the May 17 deadline being part and parcel of that burden this court determined that that burden actually passed strict scrutiny standard and was constitutional so we need to look at each restriction individually in isolation no your honor the state would submit that the court has always looked at looked at the whole of all the interlocking deadlines as a complex whole looking at how the state is actually restricting that access to the ballot what does the state do in North Carolina in North Carolina we have the 3.5 years to gather the signatures we have the 2% requirement and then we have the May 17th deadline your honor if the court were just to look at the May 17th deadline by itself a facial challenge that would pass constitutional muster because there would be no basis to say it was unconstitutional your honor to oppose the idea that maybe the plaintiffs could have come forward and somehow said we have our 82,000 signatures this May 17th deadline is preventing us from getting those last few thousand signatures that we need and then in that case would the May 17th deadline be unduly burdensome to them that's not the case here and even in that scenario they would have had the 3.5 years to gather their signatures it wouldn't just be the May 17th deadline standing alone isn't that what happened in the earlier scenario where your former colleague apparently opined that there might be a problem with this set of regulations given the number of signatures that a particular party had acquired right up before the deadline yes your honor in that case they had 40,000 unverified signatures what they needed was 45,000 verified signatures and they had a forecast that within one month they could gather another 60,000 to 70,000 signatures and in that case it was recommended and the assistant attorney general wrote the letter recommending to extend the deadline and the deadline was extended that happened prior to this court's analysis and decision in the McLaughlin case and that also happened back in the 1980s when the absentee ballot provision was only requiring 30 days the absentee ballots only had to be ready 30 days prior to the general election now it's a full 60 days and when that the deadline that deadline has never been moved again that was the only time that it was moved yes thank you your honor the state would ask that this court would uphold judge Mullen's determination that the deadline was constitutional thank you your honor you agree that the state can set a deadline don't you absolutely yeah I want to emphasize that we are not mounting a facial challenge here ours is strictly an as applied argument and as for the state's plan with regards to its various deadlines they can leave them all in place if they want to if the state wants to but it has to provide some accommodation in presidential election races and the state makes the argument that there are and only as applied we look at the facts of your circumstances then right as it applies to you the challenge is as applied to presidential to their presidential candidates yes well the parties and their candidates there's a difference isn't there yes there's a difference the 14 other states that counsel mentioned fails to take into account that each of those states offers an alternative route by which candidates can get on the ballot so it's actually the drop dead deadline is later in each of those states so candidates can get on the ballot later here in North Carolina too we really ought to keep focus on the fact that you're fighting a deadline for the registration of parties based on 85,000 signatures well that's true your honor ok well that's the case that's the as applied case as applied to presidential candidates as applied to the constitution party and the green party well our point is that the state can we're not challenging the states ability to say ok if you want to qualify as a new party then you have to file by May 17th we're not challenging that what we're saying is to the extent that precludes the constitution party and the green party from running presidential candidates this deadline is unconstitutional it's too early with regards to the presidential election race the state does have in place a fairly well conceived map if you will of the electoral process the problem is that that map ignores the differences that occur with regards to presidential elections and as for the fact that the did you make a case that the party should be get it's petition in before the primary the primary being in what pardon um that that has been frowned upon in other states that the state would have to have a reason as to why the party must identify and put it's candidates on the ballot at a point earlier than the major parties but without knowing what that reason would be it's hard for me to respond to that but the state would have to have a reason and I'll just close by saying that the date of a filing deadline has significant consequences to parties and of course there are lots of cases dealing with filing deadlines and the burdens that they impose on parties particularly with regards to presidential candidates and particularly early in that process Thank you
judges: Paul V. Niemeyer, Diana Gribbon Motz, Albert Diaz